UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| CHARLES J. HORKY, III, *et al.*, | |
|---|---|
| Plaintiffs, | Case No. 2:08-cv-0717-LDG (GWF) |
| v. | **ORDER** |
| PARAGON FEDERAL CREDIT UNION, *et al.*, | |
| Defendants. | |
| PARAGON FEDERAL CREDIT UNION, | |
| Counterclaimant, | |
| v. | |
| CHARLES J. HORKY, III, *et al.,* | |
| Counterdefendants. | |

The plaintiffs, Charles Horky and CLS Nevada, LLC, brought this action, initially seeking a declaration of the amounts they owed to Paragon Federal Credit Union, and the value of a fleet of vehicles used as collateral. Horky and CLS subsequently amended their complaint to additionally allege that Charles Featherstone brokered the loan agreements,

that Featherstone engaged in fraudulent conduct, and that Featherstone is an agent of Paragon. Relying upon these additional allegations, Horky and CLS alleged a federal RICO claim and a state RICO claim against Paragon.

Paragon counterclaimed, asserting in part that Horky and CLS were in breach of contract, and seeking a determination that they are liable for any deficiency balance.

Paragon now moves for partial summary judgment on these claims (#34). Horky and CLS nominally oppose the motion (#37), and move for partial summary adjudication (#35) solely as to the issue whether Featherstone is an agent of Paragon. Paragon opposes the motion (#41).

<u>Motion for Summary Judgment</u>

In considering a motion for summary judgment, the court performs "the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). To succeed on a motion for summary judgment, the moving party must show (1) the lack of a genuine issue of any material fact, and (2) that the court may grant judgment as a matter of law. Fed. R. Civ. Pro. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A material fact is one required to prove a basic element of a claim. *Anderson,* 477 U.S. at 248. The failure to show a fact essential to one element, however, "necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. "Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of

the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  As such, when the non-moving party bears the initial burden of proving, at trial, the claim or defense that the motion for summary judgment places in issue, the moving party can meet its initial burden on summary judgment "by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  Conversely, when the burden of proof at trial rests on the party moving for summary judgment, then in moving for summary judgment the party must establish each element of its case.

      Once the moving party meets its initial burden on summary judgment, the non-moving party must submit facts showing a genuine issue of material fact.  Fed. R. Civ. Pro. 56(e).  As summary judgment allows a court "to isolate and dispose of factually unsupported claims or defenses," *Celotex*, 477 U.S. at 323-24, the court construes the evidence before it "in the light most favorable to the opposing party." *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970).  The allegations or denials of a pleading, however, will not defeat a well-founded motion.  Fed. R. Civ. Pro. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

      In support of its motion, Paragon offers eight Loan Agreements.  Each Loan Agreement lists Horky and CLS as the borrowers.  Each Loan Agreement specifically provided that each person who signed the agreement as a borrower would be individually and jointly obligated to pay the loan in accordance with its terms and conditions.  Exhibit A to each of the loans further indicated that Horky was a Loan Guarantor.  The Loan Agreements establish that Paragon retained a security interest in each vehicle purchased with the loans.  Exhibit A to each of the loans was a list of the specific vehicles to which Paragon's security interest attached.  Each Loan Agreement expressly provided that upon

a default, Paragon could declare the entire balance immediately due and payable.  If the balance was not immediately paid, the collateral was required to be voluntarily surrendered (or, if not surrendered, that Paragon could repossess the vehicle).  Each Loan Agreement further provided that Paragon could sell the vehicles, and that any remaining deficiency was to be immediately paid to Paragon.

Horky executed each Loan Agreement.

Paragon also offers, into evidence, the Notices of Intent to Sell that were mailed to Horky and CLS.  Each Notice warned Horky and CLS that they would be liable for any deficiency remaining subsequent to the sale of the vehicles.

Finally, Paragon offers into evidence the Explanations of Calculation of Surplus or Deficiency.  These Explanations disclosed that, subsequent to the sale of the vehicles, a total deficiency remained in the amount of $3,086,239.69.

In opposition, Horky and CLS offer only a single, cursory paragraph asserting that their motion for partial summary judgment (on the issue whether Featherstone is an agent of Paragon) raises disputed material issues of fact.  Horky and CLS assert that their evidence (in support of their motion) supports their contention that the Loan Agreements were the result of fraud by Featherstone.

In opposition to Paragon's motion, Horky and CLS have not offered any evidence or argument disputing that Horky executed each Loan Agreement.  Horky and CLS have also failed to offer any evidence or argument disputing the terms of the Loan Agreements represented on each Agreement.  Horky and CLS have not disputed that each is a borrower.  Horky has not disputed that he guaranteed the loans.  Horky and CLS have not offered evidence that they obtained monies from Paragon in the amounts recited in the Loan Agreements, or that the monies were used to purchase the vehicles securing the loans.  Horky and CLS have also failed to offer any evidence disputing the amounts for which the vehicles were sold, or the deficiency remaining after the sale of the vehicles.

In short, Horky and CLS oppose the motion solely on the basis of the evidence offered in support of their motion for partial summary adjudication. In that motion, Horky and CLS seek a determination that "Featherstone at all time relevant to the issues in this case was the agent of Defendant Paragon Federal Credit Union in dealing with Plaintiffs."

In support of this motion, Horky and CLS offer the deposition testimony of Horky regarding Featherstone's representations and statements to Horky. Construed in the light most favorable to Horky and CLS, Horky's deposition testimony establishes only that Featherstone represented he was with Paragon. Horky's deposition testimony regarding Featherstone is not entirely consistent. At times, Horky testifies that Featherstone represented what Featherstone could do. At other times, Horky testifies that Featherstone represented what Paragon could do. At other times, Horky's testimony interchanges Featherstone and Paragon within the same sentence. The confusion is best summarized by Horky's own testimony that "when I say Charlie I mean Paragon," and "as far as I've ever been concerned, Charlie [Featherstone] was Paragon," and "[a]s far as I was concerned, they were the same entity." Horky Dep. p. 34, ll. 19-20, ll. 24-25, p. 35, ll 10-11. Horky's testimony also establishes that he was unaware of "who Network Automotive is." Horky Dep. p. 84, ll 8, p. 76, ll. 12-21. The deposition of Matthew Carcich, also offered by Horky into evidence, establishes that Featherstone was the president of Network Automotive. Carcich Dep. p. 44, ll. 23-24. At best, however, Horky's testimony establishes only that he was aware that Featherstone made false representations[1] but that he accepted Featherstone's representation that Featherstone was Paragon. His deposition testimony

---

[1] Horky testifies clearly, however, that he knew that Featherstone over-inflated the purchase price of the cars, that Featherstone over-financed the cars that CLS purchased (which vehicles secured Paragon's loans to CLS and Horky). Horky also testified that, due to this over-financing, he would receive as much as $100,000, or $150,000 with each loan agreement.

5

does not support any conclusion that Featherstone's relationship with Paragon was anything other than as a broker.

The remainder of the evidence offered by Horky and CLS is equally unavailing. Horky and CLS offer the deposition testimony of Leon Reitzenstein for the proposition that it "corroborates the testimony of Horky in respect to the Featherstone/Paragon arrangement." Reitzenstein, however, testified that "Featherstone acted as an intermediary and enabled CLS [Worldwide] to finance vehicles through Paragon Federal Credit Union."[2] Reitzenstein Dep., p. 6, ll. 22-24. Reitzenstein further testified that, when he first met Featherstone (while Reitzenstein was acting on behalf of CLS Worldwide), Featherstone had an office at Westwood Lincoln Mercury, and that "[Featherstone] arranged financing through Paragon." p. 9, ll. 4-11. Reitzenstein further testified that, at that time, Horky had already developed a relationship with Featherstone.

Horky also submits the deposition of Archie Granata, whom he represents is a certified public accountant who serves as the chief financial officer of CLS. The testimony does not support, and indeed tends to contradict, a conclusion that Featherstone was an agent for Paragon. Granata testified that Featherstone was a car salesman. Granata Dep. p. 29, ll 10. He further testified: "I don't even know who [Featherstone] worked for. I didn't know whether he worked for Paragon or whether he worked for himself, whether he worked for – I didn't know."

The Court recognizes that Granata also testified, several times, that "[i]t's pretty obvious to [Granata] that somebody inside Paragon was in bed with Charlie Featherstone making all that happen." Granata Dep. p. 29, ll. 22-24; p. 31, l. 25 - p. 32, l. 3. The evidence, however, does not establish that Featherstone was an agent of Paragon.

---

[2] Reitzenstein testified that he worked for a company named CLS Worldwide, and that he began his employment for CLS Worldwide when Horky owned the company. Horky subsequently left CLS Worldwide, and operated CLS Nevada.

6

Rather, the testimony is merely the belief of Granata on an issue irrelevant to whether Featherstone was an agent of Paragon.

Horky and CLS also rely upon the interrogatory responses of Paragon. Those responses, however, assert only that Featherstone was "an independent contractor acting between [Paragon] and CLS Las Vegas."

Finally, the legal arguments raised by Horky and CLS fail to support their motion. Interestingly, Horky and CLS suggest that Paragon miscontrues their motion for partial summary adjudication as being predicated on an employer/employee relationship. Any such mis-understanding, however, is attributable solely to the fact that Horky and CLS relied solely on a single statute, Nev. Rev. Stat. 41.745, and two decisions,[3] *Ray v. Value Behavioral Health, Inc.*, 967 F.Supp. 417, 420 (D. Nev. 1997) and *Perez v. VanGroningon & Sons, Inc.,* 41 Cal. 3d 962 (1986), addressing agency in the context of the employer/employee relationship.

Having reviewed the entirety of the evidence submitted by all parties in support of their respective motions, the Court finds undisputed the evidence of Paragon that Horky, on behalf of himself and CLS, executed Loan Agreements with Paragon in an amount of approximately $5,800,000, that the Loan Agreements were secured by vehicles, that pursuant to the Loan Agreements, CLS and Horky are liable for any deficiency following the sale of the collateral (subsequent to a default), that CLS and Horky defaulted on the loans, that Paragon sold the collateral, and that following the sale, a deficiency remained in the amount of $3,086,239.69 for which CLS and Horky are liable.

CLS and Horky have not offered evidence establishing, as a matter of law, that Featherstone was an agent of Paragon. Rather, the motion appears based solely on Horky's assertion that Featherstone and Paragon were the same entity.

---

[3] Horky and CLS inappropriately cite to a third decision that was formally withdrawn.

7

Accordingly, for good cause shown,

THE COURT **ORDERS** that Paragon Federal Credit Union's Motion for Partial Summary Judgment (#34) is GRANTED.

THE COURT FURTHER **ORDERS** the Motion for Partial Summary Adjudication (#35) filed by Charles J. Horky, III, and CLS Nevada, LLC is DENIED.

DATED this \_\_15\_\_ day of October, 2009.

_____
Lloyd D. George
United States District Judge